SHEILA J. HASTINGS, Plaintiff-Appellant, v. BONNIE EXLINE, Defendant-Appellee.

Fourth District   No. 4—01—0070

Opinion filed October 3, 2001.

Daniel J. Depke (argued), of Law Offices of Daniel J. Depke, of Quincy, for appellant.

Barbara A. Fritsche (argued), of Rammelkamp Bradney Kuster Keaton Fritsche Lindsay, of Jacksonville, for appellee.

JUSTICE COOK delivered the opinion of the court:

This is a premises liability action arising from a slip and fall. The trial court granted summary judgment in favor of the defendant.

On January 31, 1999, plaintiff Sheila Hastings was visiting her mother-in-law Bonnie Exline at the mobile home where Exline lives. Exline's home has two doors, a "front" and a "back." The front door has covered wooden stairs leading to it. The rear door has stairs of metal mesh leading to it and is exposed to the elements. Exline prefers that her guests use the back door so as not to track debris into her home and generally keeps the front door locked. Prior to Hastings' fall, Exline had noticed that the mesh stairs leading to the back door became slippery when wet. Exline covered the stairs with a carpet remnant. Hastings admitted that the remnant also appeared unsafe when wet and was unable to say that the remnant made the stairs any less hazardous. Hastings used the back door upon arriving at Exline's on January 31 and noticed that the rear stairs were wet. She also left Exline's home using the back door. She did so out of deference to Exline's general preference and also because it was more convenient to get to her car that way. While on the back stairs, she slipped on the carpet, breaking a bone in her foot. She was holding on to a handrail at the time and was not distracted. She slipped because the carpet was slick, not because the carpet itself had moved appreciably. Exline had a clear path to her front door, but the front door had remained locked.

After the depositions of Hastings and Exline had been taken and filed, the trial court granted summary judgment in favor of Exline. On appeal, the parties dispute whether Exline owed a duty of care to Hastings.

■ The peril in this case was open and obvious. Generally, a landowner is under no duty to protect invitees from open and obvious perils. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448-49, 665 N.E.2d 826, 832-33 (1996). However, some exceptions to this general rule have evolved in the common law. One such exception, the "forgetfulness" or "distraction" exception, was discussed in the familiar case of *Ward v. K mart Corp.*, 136 Ill. 2d 132, 554 N.E.2d 223

(1990). That exception is not applicable here. Hastings relies on another exception initially contemplated by *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 598 N.E.2d 337 (1992). There, a foreman on a construction site slipped and fell on an ice-covered incline. For the sake of convenience, workers had been using the incline to access a particular area despite the fact that another (presumably safer) means of access existed. *Ralls*, 233 Ill. App. 3d at 150, 598 N.E.2d at 341.

The *Ralls* court began by stating that the known-and-obvious-risk principle is not a *per se* rule relieving a defendant of a duty of care. *Ralls*, 233 Ill. App. 3d at 155, 598 N.E.2d at 344. "Rather, the existence of a duty in the face of a known or obvious condition is subject to the same analysis of duty as is necessary in every other claim of negligence." *Ralls*, 233 Ill. App. 3d at 155, 598 N.E.2d at 344. Thus, the court applied the usual standards for determining the existence of a duty in premises cases: (1) whether the plaintiff's injury was reasonably foreseeable by defendants, (2) the likelihood of his injury, (3) the magnitude of the burden of guarding against it, and (4) the consequences of placing that burden on defendants. *Ralls*, 233 Ill. App. 3d at 155, 598 N.E.2d at 344.

As is typical in most cases, the concept of foreseeability was central to the *Ralls* court's analysis. The court began by noting that the plaintiff's testimony indicated that he was expressly aware of the condition of the snow-covered incline and that the distraction cases were therefore inapplicable. *Ralls*, 233 Ill. App. 3d at 155, 598 N.E.2d at 344. According to the court's reasoning, however, the case before it was similar because it was reasonably foreseeable that workers at the site would use the incline to reach the area rather than use the longer and more inconvenient path. *Ralls*, 233 Ill. App. 3d at 155, 598 N.E.2d at 344.

A *Ralls*-type approach was modified and approved by the Supreme Court of Illinois in *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 706 N.E.2d 441 (1998). There, the plaintiff's employer contracted with Kemlite to remove waste from a container located on Kemlite's property. The waste in question was a type of fiberglass or similar substance that was very slippery. Oftentimes pieces of the fiberglass would be strewn around the container. On one occasion LaFever, despite being aware of the danger, was climbing over a pile of such refuse to empty the container. He slipped, fell, and was injured. *LaFever*, 185 Ill. 2d at 384-86, 706 N.E.2d at 444-45.

■ The appellate court ruled that Kemlite owed LaFever a duty based upon the traditional four-point analysis referenced above. The supreme court agreed with the conclusion that Kemlite owed LaFever

a duty but disagreed that direct application of the four-point analysis was the proper approach. The court agreed with Kemlite's contention that section 343A of the Restatement (Second) of Torts, adopted by the court in *Ward*, generally absolves a landowner from duties regarding open and obvious dangers. Restatement (Second) of Torts § 343A (1965). In LaFever's case, however, the court paid particular attention to a limitation upon that doctrine found in the Restatement:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.) Restatement (Second) of Torts § 343A(1), at 218 (1965).

*LaFever*, 185 Ill. 2d at 390, 706 N.E.2d at 447.

The "distraction exception" discussed in *Ward* constitutes one such situation where the landowner should anticipate the harm despite its open and obvious nature. The distraction exception was not applicable because there was no evidence that LaFever had been so distracted. The court explicitly adopted another exception to the open and obvious doctrine, which it did, however, find applicable: the "deliberate encounter" exception.

According to the deliberate encounter exception, harm may be reasonably anticipated when the landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). For example:

> "A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C." Restatement (Second) of Torts § 343A, Illustration 5, at 221 (1965).

This conceptual scheme reveals a tension present in both the *LaFever* and *Ralls* cases. On the one hand, according to the main body of section 343A, the issue is what the landowner could have reasonably anticipated. Therefore, the focus is on the actions of the landowner, not of the entrant, a point the *LeFever* court made at length. *LeFever*, 185 Ill. 2d at 391-92, 706 N.E.2d at 448-49. Thus the court in *Ralls* seems to have concluded within this framework that the landowner could and should have anticipated that workers would use the more convenient incline. On the other hand, however, the body of the com-

ments to the section explains that an invitee may deliberately encounter risk because "to a reasonable man *in his position* the advantages of doing so would outweigh the apparent risk." (Emphasis added.) Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965). Clearly, then, analysis under the deliberate encounter doctrine must involve at least some focus on the actions and motivations of the entrant. Illustration 5, above, was carefully drafted to leave the encounter as the injured party's only "real" solution. The supreme court deemed the facts of *LaFever* to present a similar circumstance. *LeFever*, 185 Ill. 2d at 391-92, 706 N.E.2d at 488-89. Left unexplained in *Ralls*, however, was why a reasonable man in the plaintiff's position would have found more advantage in hazarding the icy incline than in simply taking the alternate route.

■ Also undeveloped in either the Restatement, *LeFever*, *Ralls*, or for that matter Illinois law generally is what part assumption of the risk will play in these circumstances. Generally, a plaintiff who voluntarily assumes a risk of harm arising from a defendant's negligent conduct cannot recover for such harm. Restatement (Second) of Torts § 496A (1965). A plaintiff will be deemed to have voluntarily assumed a known risk when he fails to leave or chooses to remain in the area of risk under circumstances manifesting his willingness to accept it (unless contrary to public policy). Restatement (Second) of Torts § 496C (1965). And while the fact that a defendant has left the plaintiff no reasonable alternative may negate voluntariness on the plaintiff's part (Restatement (Second) of Torts § 496C (1965)), conversely, the presence of a known alternative would seemingly establish the plaintiff's voluntary assumption. The only Illinois case we have located discussing the assumption-of-risk doctrine as it relates to the deliberate encounter exception is *Smithers·v. Center Point Properties Corp.*, 318 Ill. App. 3d 430, 441-42, 741 N.E.2d 1152, 1160-61 (2000); there, the court held that the deliberate encounter exception did not abrogate the fireman's rule, a specie of the assumption of risk doctrine, although it could be argued that the fireman's rule presents a specialized case. In any event, it must be recognized that the finding of a duty alone is not synonymous with either breach or liability. See *LaFever*, 185 Ill. 2d at 396-97, 706 N.E.2d at 450; Restatement (Second) of Torts § 343A, Comment *f*, at 220 (1965) (while the known character of a risk may not be conclusive in determining the duty of the landowner, it is important in determining whether the invitee is to be charged with contributory negligence or assumption of the risk).

■ Whether couched in terms of an absence of duty or in terms of assumption of the risk, we conclude that summary judgment in favor of Exline was proper. The condition of the wire mesh stairs was known

and obvious to Hastings. Hastings provides no proof, nor does she persuasively argue, that a reasonable person in her position would have found greater utility in choosing to use Exline's back door than in using her front door, given the respective conditions of these two exits. (Theoretically, the case might be different had Hastings provided evidence that the front exit presented an equal (or worse) peril.) Hastings does not counter Exline's testimony that the front stairs and the walkway leading to them were well maintained. The front door was locked, but no evidence suggests that this presented any real obstacle to Hastings.

In sum, Hastings knew of the peril presented and voluntarily chose to hazard it despite reasonable alternatives. Exline cannot be held liable for Hastings' choice in the matter. We affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.