# Illinois Official Reports

## Appellate Court

---

### *Frieden v. Bott*, 2020 IL App (4th) 190232

---

| | |
|---|---|
| Appellate Court Caption | PETE F. FRIEDEN, Plaintiff-Appellant, v. DENNIS BOTT, Defendant-Appellee. |
| District & No. | Fourth District<br>No. 4-19-0232 |
| Filed | January 21, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 16-L-100; the Hon. Jason M. Bohm, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Miranda L. Soucie and Matthew J. Duco, of Spiros Law, P.C., of Danville, for appellant.<br><br>Stanley E. Freeman, of Law Office of Stanley E. Freeman, P.C., of Champaign, for appellee. |
| Panel | PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Cavanagh and Holder White concurred in the judgment and opinion. |

**OPINION**

¶ 1       In June 2016, plaintiff Pete Frieden sued defendant Dennis Bott alleging that Bott's negligence caused Frieden to suffer a back injury. Specifically, the complaint alleged that, in October 2015, plaintiff volunteered to work on the roof of defendant's home, and, in the course of that work, plaintiff fell from the roof, suffering a serious and permanent back injury.

¶ 2       In January 2019, defendant moved for summary judgment, arguing that (1) the undisputed evidence showed that he did not owe plaintiff a duty of care or, alternatively, (2) plaintiff was more than 50% at fault for his own injuries. In March 2019, the trial court issued a detailed written order granting defendant's motion.

¶ 3       Plaintiff appeals, arguing that the trial court erred by granting summary judgment because (1) a genuine issue of material fact exists regarding whether defendant retained sufficient control to have a duty to plaintiff and (2) plaintiff can recover under a theory of premises liability. We disagree and affirm.

¶ 4                                    I. BACKGROUND
¶ 5                                    A. The Complaint
¶ 6       In June 2016, Frieden sued Bott, alleging that Bott's negligence caused Frieden to suffer a back injury. The complaint alleged that in October 2015 Bott was doing construction work on the roof of his residence. Frieden, who is Bott's brother-in-law, agreed at Bott's request to assist with the construction of the roof. While Frieden was working on the roof, he fell to the ground and allegedly suffered a serious and permanent back injury.

¶ 7       The complaint alleged that defendant owed a duty of care to plaintiff and breached that duty by (1) failing "to provide plaintiff with a safe, suitable and proper harness, anchorage and/or lifeline with which to conduct his roofing work," (2) permitting "the [p]laintiff to work without" the aforementioned safety equipment, and (3) permitting "the [p]laintiff to work in an elevated position above the ground and to pull damaged wood when the circumstances required" the aforementioned safety equipment to protect "the life and limb of those on the roof such as the [p]laintiff." The complaint further alleged that, as a result of defendant's negligence, plaintiff suffered a back injury and multiple related damages.

¶ 8       In July 2016, defendant answered the complaint, essentially denying all of the material allegations. Defendant also asserted the affirmative defense that plaintiff acted negligently, was more than 50% at fault for his injuries, and was therefore barred from recovery.

¶ 9                          B. Defendant's Motion for Summary Judgment
¶ 10      In January 2019, defendant moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2018)), arguing that there was no genuine issue of material fact that (1) he did not owe plaintiff a duty of care or, alternatively, (2) plaintiff was more than 50% at fault in contributing to his own injuries. In support of his motion, defendant attached transcripts of discovery depositions of plaintiff and defendant, and the following information is taken from their testimony in those depositions.

¶ 11      Defendant planned the roof replacement project and purchased all the required materials. Defendant asked his family members and plaintiff to help him with the project. Defendant confirmed that it was his project, and he decided when the project would be worked on. He

also testified that he "gave direction" to the people working on the roof by telling them how to complete tasks like removing shingles and nails or rolling the tar paper.

¶ 12 Plaintiff did not know what part of the roof needed repairs before arriving at the house. He worked at the direction of defendant but was not obligated to stay and work. He was a volunteer and did not expect to be paid.

¶ 13 Plaintiff stated that there was no discussion about fall protection, but he did not express any concerns related to the absence of fall protection. He knew he could slip off the roof.

¶ 14 Plaintiff was asked who made the decision regarding the work sequence, and plaintiff said "I think—it was just, you know—I guess [defendant]. I mean, nobody really said do this one first, do that first. Just do it."

¶ 15 Plaintiff testified that defendant told people what section of the roof to work on. He also testified that, if defendant had told him how to do the incidentals of his work, he would have listened to him.

¶ 16 Later in January 2019, plaintiff filed his response to defendant's motion, in which he asserted that the record contains sufficient facts to support a finding of both direct liability and premises liability against defendant.

¶ 17 In February 2019, the trial court conducted a hearing on defendant's motion for summary judgment. At that hearing, plaintiff acknowledged that an employer-employee relationship did not exist between plaintiff and defendant, but he argued that defendant nonetheless owed a duty to plaintiff because defendant was "in control of a work site" and therefore needed "to ensure that there's worker safety," whether or not the workers were compensated. Plaintiff also argued that he could recover under a premises liability theory. Plaintiff conceded that the risk he faced was open and obvious; however, he argued that the deliberate encounter exception should apply.

¶ 18 C. The Order Granting Summary Judgment

¶ 19 In March 2019, the trial court issued a detailed written order granting summary judgment in favor of defendant. In doing so, the court concluded that defendant owed no duty to plaintiff because defendant did not retain sufficient control to support a duty under section 414 of the Restatement (Second) of Torts. See Restatement (Second) of Torts § 414 (1965). The court also concluded that the deliberate encounter exception under section 343A of the Restatement does not apply. See *id.* § 343A.

¶ 20 The trial court noted that neither plaintiff nor defendant were professional roofers, but both had some experience with volunteer roofing projects. Plaintiff did not expect any compensation for his work. Plaintiff did hope that, if he had a similar project in the future, defendant would be willing to return the favor by helping him. Plaintiff and defendant did not discuss the project at length before work began. Plaintiff did not discuss with defendant any concerns about falling. Defendant did not provide specific direction to plaintiff. About two hours into the work, plaintiff slipped and fell off the roof and was taken to the hospital. Later, defendant finished the project with the help of his adult children, who brought safety harnesses after plaintiff had fallen off the roof.

¶ 21 The trial court concluded that defendant did not retain sufficient control over plaintiff's work to support a duty under section 414 because plaintiff worked independently. The court explained that, for a principal to have sufficient control to assume liability pursuant to section

414, the principal must control the manner in which the work is done such that the worker is not entirely free to do the work his own way. The court concluded no genuine issue of material fact existed that (1) plaintiff was entirely free to perform the work in the manner he chose and (2) defendant did not direct the operative details of how plaintiff worked.

¶ 22   The trial court also concluded that the deliberate encounter exception did not apply. Citing *Hastings v. Exline*, 326 Ill. App. 3d 172, 175, 760 N.E.2d 993, 996 (2001), the court noted that this exception applies when a landowner has reason to expect that an invitee will proceed to encounter a known or obvious danger because, to a reasonable man in his position, the advantages of doing so outweigh the apparent risk. However, the court decided that, because there was no genuine issue of material fact that plaintiff did not stand to benefit economically or otherwise by working on the roof, the evidence did not support this exception. The court granted summary judgment in favor of defendant, and this appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24   Plaintiff appeals, arguing that the trial court erred by granting summary judgment because (1) a genuine issue of material fact exists regarding whether defendant retained sufficient control to have a duty to plaintiff and (2) plaintiff can recover under a theory of premises liability. For the reasons that follow, we disagree and affirm.

¶ 25                     A. Summary Judgment and the Standard of Review

¶ 26   Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). To determine whether a genuine issue of material fact exists, a reviewing court construes all facts against the moving party and liberally in favor of the opponent. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25, 77 N.E.3d 1. A genuine issue of material fact exists if the facts are disputed or, if they are undisputed, reasonable people might draw different inferences from the undisputed facts. *Id.* Summary judgment rulings are reviewed *de novo*. *Id.*

¶ 27                        B. Negligence and Duty Generally

¶ 28   To state a claim for negligence, a plaintiff must allege (1) duty, (2) breach, (3) causation, and (4) damages. *Id.* ¶ 26. "The duty inquiry focuses on 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.' " *Id.* ¶ 27 (quoting *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990)).

¶ 29   Whether the law imposes a duty of reasonable care upon a defendant for the benefit of the plaintiff depends upon the nature of their relationship. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18, 965 N.E.2d 1092. When determining whether a duty exists, courts primarily consider the four traditional duty factors, which are (1) the likelihood of injury, (2) the reasonable foreseeability of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Id.* Courts also consider public policy when determining whether a duty exists. *Id.* ¶ 17. If a duty is found to exist, the general rule is that a defendant owes his or her invitees and licensees a duty of reasonable care under the circumstances. *Grant v. South Roxana Dad's Club*, 381 Ill. App. 3d

- 4 -

665, 673, 886 N.E.2d 543, 551 (2008).

¶ 30                                        C. Section 414 Does Not Apply to This Case

¶ 31        Plaintiff first argues a factual question exists regarding whether defendant retained sufficient control to have a duty to plaintiff under section 414 of the Restatement (Second) of Torts. However, principals generally are not liable for the negligence of independent contractors. Restatement (Second) of Torts § 409 (1965). Independent contractors are people who render services for a principal but are only controlled as to the result of their work and not the means by which that result is accomplished. *Carney*, 2016 IL 118984, ¶ 31.

¶ 32        Section 414 is an exception to section 409 because section 414 states that principals who exercise control over independent contractors are directly liable if they exercise their control in a negligent manner. Restatement (Second) of Torts § 414 (1965). Plaintiff asserts that, on the facts of this case, a genuine issue of material fact exists as to whether he can recover through section 414. We disagree.

¶ 33                                             1. *The Applicable Law*

¶ 34        Generally, "one who employs an independent contractor is not liable for the acts or omissions of the independent contractor." *Wilkerson v. Paul H. Schwendener, Inc.*, 379 Ill. App. 3d 491, 493, 884 N.E.2d 208, 210 (2008).

> "Because the hiring entity has no control over the details and methods of the independent contractor's work, it is not in a good position to prevent negligent performance, and liability therefor should not attach. Rather, the party in control— the independent contractor—is the proper party to be charged with that responsibility and to bear the risk." *Carney*, 2016 IL 118984, ¶ 32.

¶ 35        However, Illinois courts have adopted section 414 of the Restatement (Second) of Torts, which states as follows:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

¶ 36        In determining whether control was sufficient for section 414 to apply, the supreme court has quoted section 414, comment c, as follows:

> " 'In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.' " *Carney*, 2016 IL 118984, ¶ 46 (quoting Restatement (Second) of Torts § 414, cmt. c, at 388 (1965)).

¶ 37                                    2. *This Case*

¶ 38        Plaintiff is correct that section 414 sets forth a theory of direct liability. *Id.* ¶ 36. Nonetheless, for section 414 to apply to this case, plaintiff must still establish that (1) defendant had control over the work, (2) defendant caused harm to another, and (3) it was his negligent use of his control that caused the harm. See *id.* ¶ 33. Plaintiff's claim fails because defendant did not retain sufficient control.

¶ 39        As the trial court correctly noted, the fact that defendant had a general right to order the work to begin or stop, to inspect its progress, or to make nonbinding suggestions, is insufficient. *Id.* ¶ 46. Instead, defendant (who was the principal) would have needed to control the work in such a way that plaintiff (who was the independent contractor) was not entirely free to do the work his own way. *Id.*

¶ 40        Here, although defendant did buy supplies, was present on the worksite, chose what part of the roof work would be done on, and dictated when the work would start and stop, he did not control the incidentals of plaintiff's work. Plaintiff brought his own tools and worked without specific direction. This is precisely what makes an independent contractor "independent"—the principal sets the objective, but the independent contractor works to complete it in his own way. *Id.* ¶ 31.

¶ 41        An important fact that distinguishes this case from all the cases the parties cited and this court could find is that plaintiff here was an unpaid volunteer. The level of control that could be exercised over him was less than that which could be exercised over a paid worker. A direction given to a volunteer does not control a volunteer to the same degree as it would a paid worker because nothing prevents the volunteer from simply walking off the job. In this regard, we know of no case in which section 414 has been applied to a case involving a volunteer.

¶ 42        Additionally, we note that this case was decided by the trial court based upon *how* to apply the language of section 414, not the question of *whether* that section applies at all. Defendant argues section 414 does not apply at all, citing *Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 592, 900 N.E.2d 1249, 1265 (2008). *Grillo* explains that section 414 addresses the duty owed by an employer to others, such as employees of an independent contractor and other third parties. However, *Grillo* also held that nothing in section 414 imposes a duty upon employers that inures to an independent contractor. *Id.* Although we view *Grillo* as well reasoned, we need not address that case further because (1) the trial court did not grant summary judgment on that basis and (2) we can affirm the trial court's judgment without addressing this topic. We are aware that we can affirm on any basis shown in the record; however, in this instance we choose to review only the analysis of the trial court.


¶ 43                D. The Deliberate Encounter Exception Does Not Apply to This Case

¶ 44        Next, plaintiff argues that the trial court erred by granting defendant's motion for summary judgment because he can recover under a theory of premises liability. Plaintiff contends that the court erred by finding the open and obvious rule barred his action against defendant as a matter of law. Plaintiff asserts there were facts sufficient to raise the deliberate encounter exception. We disagree.

### 1. *The Open and Obvious Doctrine*

As the trial court correctly noted, "[g]enerally, a landowner is under no duty to protect invitees from open and obvious perils." *Hastings*, 326 Ill. App. 3d at 173. A condition on the land is "open and obvious" when a reasonable person in the plaintiff's position, exercising ordinary perception, intelligence, and judgment, would recognize both the condition and the risk involved. *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 51, 115 N.E.3d 282. Normally, the open and obvious doctrine applies to conditions like fire or bodies of water; however, it can extend to other conditions, such as sidewalk defects. *Id.*

### 2. *The Deliberate Encounter Exception*

An exception to the open and obvious doctrine is the "deliberate encounter" exception, derived from section 343A of the Restatement (Second) of Torts and adopted by the Illinois Supreme Court in *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 391, 706 N.E.2d 441, 448 (1998). This court recently analyzed this exception in *Winters*, in which we stated that "[t]he deliberate encounter exception applies when the possessor of land has reason to expect that an invitee or licensee will proceed to encounter a known or obvious danger because a reasonable person in plaintiff's position would do so." *Winters*, 2018 IL App (4th) 170669, ¶ 70. As the Illinois Supreme Court stated, the possessor of the land has this expectation because the "advantages of [the reasonable person's] doing so would outweigh the apparent risk." (Internal quotation marks omitted.) *LaFever*, 185 Ill. 2d at 391. This advantage often comes in the form of economic compulsion—in other words, the person encounters the danger because his employment requires it. *Winters*, 2018 IL App (4th) 170669, ¶¶ 71-72.

In *Winters*, the plaintiff was not employed by the defendant but instead took a dangerous path through the snow-filled parking lot of his apartment complex and suffered an injury. *Id.* ¶ 69. In *Winters*, we concluded that the deliberate encounter exception did not apply because plaintiff faced no economic compulsion and was aware of reasonable alternative routes. *Id.* ¶¶ 74-76.

### 3. *This Case*

As an initial matter, we agree with the parties that the danger in this case—falling from a roof—was open and obvious. Therefore, the issue is whether the "deliberate encounter" exception applies, and we conclude that it does not.

Plaintiff was merely a volunteer and therefore was under no compulsion, economic or otherwise, to encounter the obvious danger of being on a roof with no safety equipment. Plaintiff cites two cases that he claims show that the deliberate encounter exception can be applied in situations outside of economic compulsion: *Simmons v. American Drug Stores, Inc.*, 329 Ill. App. 3d 38, 44-45, 768 N.E.2d 46, 53 (2002), and *Rusch v. Leonard*, 399 Ill. App. 3d 1026, 1036, 927 N.E.2d 316, 326 (2010). However, both of these cases involve situations in which the plaintiff was injured while using the only method of movement available to him— the only available exit in *Simmons*, and the only stairwell to move between floors in *Rusch*.

Although plaintiff is correct that a person need not be *economically* compelled to encounter the danger at issue, there nonetheless must be some sort of driving force that will cause a person to encounter the obvious danger "because to a reasonable man in his position the *advantages* of doing so would outweigh the apparent risk." (Emphasis added.) Restatement (Second) of

Torts § 343A, cmt. f (1965). However, this case does not present a situation in which plaintiff would gain any advantage by going on the defendant's roof.

¶ 54　　This case is much more like *Hastings* or *Winters*, both of which were cases in which a person was injured because the person took a less safe path despite reasonable alternatives. In *Hastings*, defendant requested the plaintiff to use the back door instead of the front door to exit, despite knowing the back exit's steps were dangerous. *Hastings*, 326 Ill. App. 3d at 173. The trial court granted summary judgment in favor of defendant, and this court affirmed because the deliberate encounter exception did not apply. We held that the plaintiff failed to show "a reasonable person in her position would have found greater utility in choosing to use [defendant's] back door than in using her front door, given the respective conditions of these two exits." *Id.* at 177. In *Winters*, we reached the same result because "plaintiff *** failed to demonstrate that a reasonable person in his position would have found greater utility in choosing to walk over the snow pile instead of using one of the alternative paths." *Winters*, 2018 IL App (4th) 170669, ¶ 75.

¶ 55　　In the present case, an alternative path was also available—namely, plaintiff could have simply walked away. Although plaintiff tries to fashion some kind of "family obligation" he needed to fulfill by working on the roof, we decline to extend the notion of "advantage" necessary for the deliberate encounter exception to apply to mere personal feelings of obligation.

¶ 56　　In closing, we thank the trial court for its careful consideration of the arguments and for its detailed written order, which this court found particularly helpful to the resolution of this case.

¶ 57　　　　　　　　　　　　　　　III. CONCLUSION
¶ 58　　For the reasons stated, we affirm the trial court's judgment.

¶ 59　　Affirmed.